FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

AUG 1 2 2025

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

IFP Submitted
Related DD)

PHILLIP E. HUGHES Sr.
1319 Warner Ave
Santa Ana Ca. 92704
philliphughes002@gmail.Com (whereas at the time of signing of this verified complaint
Plaintiff authorizes email service of all documents)
In Propria Persona
Phone: 1.657.243.2719

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### (VERIFIED COMPLAINT)

PHILLIP E. HUGHES Sr.

**Plaintiff**

vs.

DOUG COLLINS, in his official capacity,
Secretary, Department of Veterans Affairs;
STEVEN BRAVERMAN, in his official
capacity, Director, VA Greater Los Angeles
Healthcare System; West Los Angeles VA, Dr.
Jennifer Blair Plotkin M.D, Dr. Daniel Chiou
resident, Dr. Alexandra I. Stavrakis attending
surgeon, Dr. Jones Whitney Jones,  Doe 1
(Amy, as this is the name all medical staff
conveyed to Plaintiff as true and correct and if
untrue shows intent)  or Michelle F. Cartas
(surgery intake nurse true name may be
different )

Doe 2 or Jeyion "The Finger Wager" (surgery

Case No. 8:25-cv-01778-AB-(PD)
**COMPLAINT FOR INJUNCTIVE, DECLARATORY, MANDAMUS AND MONETARY RELIEF FOR**

**Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

**Negligence and Medical Mal-Practice Violation of 28 U.S.C 1346(b), §§ 2671-2680**

**Violation of the Emergency Medical Treatment and Active Labor act, Section 1867 of the Social Security act , 42 U.S.C § 1395dd**

**Intentional and Negligent Infliction of Emotional Distress**

Related case with possible joinder:
2:22-cv-08357
THE HONORABLE DISTRICT COURT
JUSTICE DAVID O. CARTER PRESIDING

**DEMAND FOR JURY TRIAL**

1

1   intake nurse true name may be different)

2   sued herein as does 1-2,  The Medical Board of

3   California, TRACEY C. DIDINGER M.D License

4   # A 135500 , JALALI, SHAHRAM M.D License

5   # A 82712, SHANIN S. RAD M.D, P.C,

6   License No.# A130858 dba L.A BONE AND

7   JOINT INSTITUTE, VALLEY PRESBYTERIAN

8   HOSPITAL and Staff, those sued herein as

9   licensing agencies, wherefore, to act or accept

10  liability, The and DOES 3 to 10,  inclusive,

11  **Defendants**
    **I. PARTIES**

    1.  Plaintiff **PHILLIP HUGHES** which is a natural person residing in and doing business in the County of Los Angeles, State of California, (hereinafter known and referred to as **"PHILLIP"** or **"PLAINTIFF"**) is a member of **protected classes**, (1) **A Disabled United States Marine Corps Military Veteran** (2)**Senior Demographic (Born 1965**) (3) **Medi-Cal recipient being** (4) **Veteran Assisted Section 8 Housing (V.A.S.H) recipient.** As well, **Alumni of Loma Linda University School of Allied Health Department of Physical Therapy,** Administrator of the Estate of both parents deceased from the Covid 19 virus; **Father William S. Hughes a Two War Veteran (The Korean War and The Vietnam War),** and **Mother Irene A. Hughes, Legal Secretary to an Unlimited Superior Court Judge, an Executive Secretary for General Electric, a H and R Block subsidiary owner**, **and ;**

    <u>**Honored Invitee to the**</u>
    <u>**Inauguration of the 44th United States President**</u>
    <u>**Barack Obama**</u>

## II. SUCCESSFULLY NAVIGATED CIVIL ACTIONS

- **Hughes v. Harry Leo**; Unlimited Jurisdiction Case No.# BC492961 prevailed by settlement. (non-disclosure agreement) **Reason for claim: Discrimination**
- **Hughes v. Diamond Environmental Services**; Unlimited Jurisdiction Case No.# BC490385 prevailed by settlement. (non-disclosure agreement) **Reason for claim: Defamation of Character**
- **Hughes v. Moham Sr. (Major Gas Station Owner)**; Unlimited Jurisdiction Case No.# BC488365 prevailed by settlement. (non-disclosure agreement) **Reason for claim: Real estate default**
- **Hughes v. Clement (Major Gas Station Manager)**; Unlimited Jurisdiction Case No.# BC491807 prevailed by settlement. (non-disclosure agreement) **Reason for claim: Real estate default"**
- **Hughes v. Gevor Sarkisyan (Restaurant Owner)**; Unlimited Jurisdiction Case No.# BC505897 prevailed by settlement. (non-disclosure agreement) **Reason for claim: Serving degraded food (Severe Food Poisoning)**
- **Hughes v. Starwood Inc (Major Apartment Owner)**; **Unlimited** Jurisdiction Case No. #BC567531 won by settlement. (non-disclosure agreement) **Reason for claim: Rental Discrimination**
- **Hughes v. The Kroger Company (Parent Company of Ralphs, Food_4_Less...)**; Unlimited Jurisdiction Case No.# BC535558 prevailed by settlement. (non-disclosure agreement) **Reason for claim: Placing managers special label on degraded shell fish Plaintiff was in a coma for 24hrs note: Doctor said it would have probably killed a child.**
- **Hughes v. La Sierra University**; Unlimited Jurisdiction Case No.# BC555322 prevailed by settlement. (non-disclosure agreement) **Reason for claim: Extortion**

- **Hughes v. Enrique Antonio Ruiz (Auto Repair Shop Owner)**; Unlimited Jurisdiction Case No.# BC539035 prevailed by settlement. (non-disclosure agreement) <u>**Reason for claim: Extortion (defective engine)**</u>
- **Hughes v. Huntington Park Rent-A-Center**; Unlimited Jurisdiction Case No.# BC542809 prevailed by settlement. (non-disclosure agreement) <u>**Reason for claim: Racial Discrimination (Racial language)**</u>
- **Hughes v. AT&T**; Unlimited Jurisdiction Case No.# BC548710 prevailed by settlement. (non-disclosure agreement) <u>**Reason for claim: Extortion (excessive over billing)**</u>
- **Hughes v. USAA**; Unlimited Jurisdiction Case No.# 032990940-011 prevailed by settlement. (non-disclosure agreement) <u>**Reason for claim: Estate theft**</u>

ect.........To verify cases go to www.lacourt.org

2. Plaintiff is informed and believes and thereon alleges that Defendant **The West Los Angeles Department of Veterans Affairs and The Medical Board of California** residing in and doing business in the County of Los Angeles, State of California (hereinafter known and referred to as **(W.L.V.A or T.M.B.C"DEFENDANT" or "DEFENDANTS")**.

3. Plaintiff is informed and believes and thereon alleges that Defendant **The West Los Angeles Department of Veterans Affairs, Dr. Jennifer Blair Plotkin M.D  Dr. Daniel Chiou resident, Dr. Dr. Jones Whitney Jones, Doe 1 Amy (surgery intake nurse last name unknown), Doe 2 Jeyion "The Finger Wager" intake nurses at surgery intake desk whom appears to be of Asian decent** are natural persons residing in and doing business in the County of Los Angeles, State of California.

4. Plaintiff is ignorant of the true names and capacities of the **Defendants** sued herein as does 3-10, inclusive, and therefore sue these defendants by such fictitiously named defendants as responsible in some manner for the occurrences herein alleged, and that the Plaintiff's damages as herein alleged were proximately caused by their conduct.

4

5. Plaintiff is informed and believes and thereon alleges that Defendant **TRACEY C. DIDINGER M.D, JALALI, SHAHRAM M.D, SHANIN S. RAD M.D.P.C** residing in and doing business in the County of Los Angeles, State of California (hereinafter known and referred to as

   **"Dr. Didinger"**, **"Dr. Jalali "**, **"Dr. Shanin"**, **"DEFENDANT"** or **"DEFENDANTS"**).

6. Plaintiff is informed and believes and thereon alleges that Defendant **L.A Bone and Joint Institute, Valley Presbyterian Hospital and The Medical Board of California** residing in and doing business in the County of Los Angeles, State of California (hereinafter known and referred to as **(LA.B.J, V.P.H, T.M.B.C"DEFENDANT" or "DEFENDANTS"). Res Superior respondeat**

7. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as and does 1-10, inclusive, and therefore sue these defendants by such fictitiously named defendants as responsible in some manner for the occurrences herein alleged, and that the Plaintiff's damages as herein alleged were proximately caused by their conduct.)

## II. NATURE OF THE CASE

This is an Action arising from Defendants' egregious Actions and the damages caused thereby.

## IV. JURISDICTION

31. This Court has jurisdiction over Plaintiff' claims for injunctive relief based on 28 U.S.C. § 1331 because those claims arise under federal statutes and federal common law.

32. Additionally, this Court has jurisdiction over Plaintiff' claims under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) based on 28 U.S.C. § 1343(a)(4) and 1346(a)(2), because those claims seek to secure equitable relief under an Act of Congress and because the United States is a defendant.

33. This Court has jurisdiction over Plaintiff' charitable trust claims asserted herein because they implicate significant federal issues, including an analysis of whether Congress has passed a statute agreeing to assume fiduciary duties as a trustee of the charitable trust.

5 5 U.S.C. § 706(2)(A), (C), (D). 36 VA Nat'l Ctr. Homelessness Among Vet., Homeless Evidence and Research Synthesis (HERS) Roundtable Series 3 (2018), https://www.va.gov/HOMELESS/nchav/docs/HERS_Proceedings_SuicideAndHom elessVeteransSymposium_Feb2018_508.pdf. 37 John A. Schinka et al., Mortality and Cause of Death in Younger Homeless Veterans, 133(2) Pub. Health Reps. 177-81 (2018).

34. To the extent Plaintiff' claims to enforce the terms of the Charitable Trust and for an accounting of profits do not present a federal question sufficient to confer jurisdiction under 28 U.S.C. § 1331, this Court has jurisdiction over those under 28 U.S.C. § 1367.

35. Finally, this Court has jurisdiction over Plaintiff' alternative claim for relief under 28 U.S.C. § 1361. And 28 U.S.C 1346(b), §§ 2671- 2680

## V. VENUE

36. Venue is proper in the Central District of California under 28 U.S.C. § 139l(b) because all of the acts and/or omissions complained of herein occurred or will occur in the District.

## STATEMENT OF FACTS

1. On or about 02-27-2024 Plaintiff Phillip E. Hughes was scheduled for patella tendon rupture repair surgery at the West Los Angeles Veteran Affairs.

2. Plaintiff came to the W.L.V.A, whereas Plaintiff checked in with Amy last name unknown at the present time. After Amy verified Plaintiff and finished her check-in process, Plaintiff inquired as to the location of the nearest restroom whereas Amy came from behind the check-in counter and walked Plaintiff to the restroom approximately 15-20ft from the counter. After Plaintiff used the restroom fully emptying its bladder Amy came to the waiting room where Plaintiff was waiting for its surgery and demanded Plaintiff to give a urine sample.

3. Plaintiff explained to Amy that it had (moments before) (See Dr. Chiou's and Amy's ( maybe Michelle F. Cartas) Medical Notes of 2-27-2024 as exhibit A) emptied its bladder and as well explained that Plaintiff's body has been on an unconscious regiment for years, in which Plaintiff uses the rest room three times a day, morning, noon and night.

4. Plaintiff's is a 58-year-old male who is burdened with an enlarged prostate that makes it very difficult to urinate when Plaintiff is on its regular eating regiment.

5. The request to give a urine sample was hard enough without being exacerbated by the fact that Plaintiff had not eaten nor drank anything for approximately 12 hour (By Hospital pre-operation orders) before the request.

6. Basically Plaintiff was depleted of waste and could not give a urine sample of 1ml let alone 45 ml (45ml is Based on V.A directives for urine sample donation), which was conveyed to all medical personnel that Plaintiff encountered.

7. When Plaintiff requested something to drink to stimulate its bladder Amy provided Plaintiff with a cup of water with approximately one pinky finger width (approx. 1-2ml) of water and instructed Plaintiff not drink anything more than what she had given Plaintiff. Plaintiff responded with bewilderment explaining to Amy that this would not be enough to stimulate its bladder, whereas Plaintiff's assessment was met by an obtuse posture from Amy as Plaintiff was left to its on devises to provide a urine sample for screening.

8. There was a male Licensed Vocational Nurse (name unknown presently) whom was very understanding and respectful, Whereas, he sympathized with Plaintiff's situation and left to retrieve the actual Orthopedic Surgery Resident Dr. Danial Chiou.

9. Plaintiff adamantly contends it did not refuse the request for a urine sample (as Dr. Danial Chio states in his notes) , In the aforementioned situation, Plaintiff was required to excrete urine whereas it had not the ability to do so.

10. In Defendant's note (See exhibit A) Dr. Chiou states Plaintiff refused to provide a urine sample and that given Plaintiff's substance abuse the anesthesia team wanted a repeated utox (See exhibit A) but Dr. Chiou conveniently omitted that the substance abuse charted, which was the reason for the mandatory urine screening request was due to a **14 year old** donation of **trace amounts** of an unauthorized substance, whereas Plaintiff denies use, Furthermore Plaintiff tested for

substance abuse at least 41 times with only the 1 positive test on May 12, 2010. **(See Consult request note as exhibit B).**

11. Next, Dr. Chiou within a 2-3 minute consultation presumably researched approximately 1659 pages of medical record notes to find the aforementioned 14 year old positive utox donation.

12. Firstly, Plaintiff being a **medical professional and legal researcher** itself questioned the volatility of the findings due to the fact that to research 1659 pages of notes would require a much greater time than 2-3 minutes unless one had prior awareness of the location of the note (premeditation), here Dr. Chiou was posed the question (by Plaintiff) of location and date of the note that was being used to deem Plaintiff a mandatory urine donor.

13. Plaintiff contends that the aforementioned question posed was within the consultation period which lasted only 2-3 minutes, secondly the anesthesia team interviewed Plaintiff wherein that interview Plaintiff was not informed of any substance abuse issues or concerns.

14. Plaintiff contends if anesthesia had a concern about a patience's substance abuse it would convey to the patient to not have the substance that is being abused in the patient's system, making the patient aware of the dangers of the anesthesia and substance being combined. Furthermore, it would most likely follow-up with a conveyance (to the patient) that the patient will be required to donate urine for screening, whereas in this situation Plaintiff would have been informed and when it asked Amy were the restroom was Plaintiff would have let Amy know that a urine sample was required, wherefore Amy could have taken the appropriate action. Plaintiff cannot walk unassisted without the aforementioned surgery and would have been prepared to accommodate any requested utox demand.

15. Plaintiff in its opposition to Dr. Chiou's assertions (in his 02.27.2024 note) would infer that this request was not initiated by anesthesiology.

16. Plaintiff's notes are void of a utox order from the anesthesia team (in the present circumstance the utox order should have been prepared prior to the date of surgery). Plaintiff would also infer the reason Dr. Chiou omitted the 14 years old donation (in his note) was due to him knowing he was acting outside of V.A directive, and knowing that the utox he is using to make Plaintiff a mandatory donor is not congruent with V.A directives and law, whereas He (Dr. Chiou) was merely attempting to mitigate his exposure to any attempted redress. Furthermore, to add insult to injury Dr. Chiou wrote on Plaintiff's leg with a maker (See picture of Plaintiff's knee as Exhibit C), with no intention to perform the necessary surgery, **it appeared while he was writing on Plaintiff's leg Dr. Chiou had a smirk on his face**.

17. Furthermore V. A directive allows only water to be given to the donor subject to a urine sample screening but, Dr. Chiou and Amy instructed Plaintiff that they could inject Plaintiff with Intravenous fluids whereas, "only water" is to be given if the donation is to be congruent with V.A directive.

18. This proposed Intravenous injection would amount to no more than an experimental procedure. Amy nor Dr. Chiou had the authority (Medical or otherwise) to experiment on Plaintiff or any Patient.

19. **Furthermore, the smile on Amy's face appeared as if she was enjoying the fear on Plaintiff's face as Plaintiff remembered the day a friend of it shared that he believed he was coerced to allow a V.A physician (student) to amputate his leg below the knee because the physician conveyed to him that it would ultimately cause him trouble an would at some point need to be amputated, In tears he stated,**
    **" I should have never let them cut my leg off"**

20. Plaintiff, extremely apprehensive of what fluids would be in the IV fluids, and with the knowledge that Amy nor Dr. Chiou had the medical authorization to preform experimental procedures became upset and its blood pressure rose considerably to a

9

point that the L.V.N instructed Plaintiff to relax for a while as he would come back later
to take another blood pressure measurement because this one is too high.

Plaintiff was extremely apprehensive and emotionally traumatized pondering that the
two (Amy, Dr. Chiou) were attempting to harm it.

21. As well, Plaintiff contends that these actions (of Dr. Chiou) have breached the threshold
of battery, perjury and suborning perjury (due to his co-signers confirmation of his
note).

22. Next, orthopedic manager Dr. Whitney Jones aggressively called Plaintiff every day for
almost two weeks straight, whereas she became angry due to Plaintiff informing her
partner Ami (phone #323.902.6833) she was too aggressive, Dr. Jones wrote a note that
detailed that she had concerns about a substance abuse note that she herself stated was
written over a decade ago. (See Exhibit B)

23. Plaintiff contends Dr. Jones added this note in an effort to harass Plaintiff and deny
Plaintiff it's guaranteed V.A benefits due Plaintiff removing her from its case
management team.

24. Due to Plaintiff's apprehension Plaintiff requested a new Orthopedic case manager and
was granted a new case manager (Ami), but on the 26th of Feb. 2024 Plaintiff was
contacted by Dr. Jones informing it that the day of surgery was updated to 02.27.2024
(please see Exhibit C case management note of Dr. Jones) instead of the previously
scheduled date 02.28.2024 which Ami had scheduled (please Exhibit D case
management note from Ami).

25. Plaintiff also contends given the aforementioned, Plaintiff may have been the
unwitting subject of a pay to play scheme revenge (due to Plaintiff's case manager
being substituted for another).

26. Plaintiff, whom interned at hospitals, and is aware of (pay to play) schemes involving
UCLA students (threw news of the parents of U.C.L.A students being incarcerated and
Federal Judge David Carter), contends that with the aggression and anger presented by

Dr. Whitney Jones, Plaintiff contends Dr. Jones enlisted the services of Dr. Choiu to exact her revenge for Plaintiff making her miss her payday for the surgery.

27. Here Plaintiff sites Exhibit C, whereas this not details Dr. Jones acquiring Plaintiff's surgery case management and redirecting Plaintiff's surgery to Plaintiff's demise.

28. Now to doe 2, "The Finger Wager" , this nurse came into Plaintiff's hospital room and walked pass Plaintiff's Hospital bed, put here index finger in the air and said "You Gon Piss" and just walked out. It appeared to Plaintiff  her agenda for the finger waging and statement, was only to intimidate and harass Plaintiff.

29. Defendants (per V.A directive) did not have the authority to deem Plaintiff a mandatory donor, the note was too old to indicate a mandatory utox and there was no physical signs of impairment, testament to this fact is Plaintiff's detailed recollection of the encounter at issue, whereas all named Defendants acted outside of V.A directive and Law.

30. Furthermore, On 3.21.2024 Plaintiff arrived at Temple Street V.A to acquire its monthly prescription whereas when Plaintiff reached the pharmacy window the reception pharmacist immediately informed Plaintiff that he was required to provide a urine sample for screening. Plaintiff believes this request was due to the note written by Dr. Chiou.

31. Unaware of this requirement before arrival, but able to provide a urine sample which produced a negative utox. (please urine sample screening of 3.21.2024 as exhibit E) Plaintiff not only contends Defendants lacked the elements needed to deem Plaintiff a mandatory donor, their assertions, concerned that Plaintiff was abusing unauthorized substances was incorrect and unnecessary, whereas Plaintiff is still in severe pain needing its patella tendon repaired. Their incorrect decision to refuse to repair Plaintiff's patella tendon was extreme, done with malice causing Plaintiff severe physical harm and emotional stress.

32. Plaintiff contends that if you are not going to provide the patient with prior notice of a utox then you cannot restrict food and drink consumption and expect a patient with prostate issues to accommodate the requirement.

33. Final, there has been no attempt to follow up with the patient (Plaintiff) Phillip Hughes to attempt another patella tendon repair surgery to date, and in fact Plaintiff's V.A medical benefits have been further restricted whereas its primary doctor has refused to refill its medications ,whereas Dr. Flokin and her nurse has instructed Plaintiff to visit the emergency room or an outside medical facility to acquire any further medications. whereas this refusal to discharge her duty of care, is a violation of her licensure ("Do No Harm"). Furthermore Dr. Flokin denied Plaintiff with any alternative medicines for Plaintiff pain an ulcers , whereas Plaintiff being a United States Marine Corp. Disabled Veteran, She has the Duty to provide Plaintiff with full medical benefits within code standards, not to refer Plaintiff to outside facilities.

34. Plaintiff further contends that Evelyn Garcia has a connection to this Complaint due to the fact Dr. Flokins posture seems to be retaliatory for the above entitled action but she should have no awareness of the civil action and have no other reason to posture in such a way against Plaintiff, whereas she has refilled my medications for the last three months with no problem. Now she has required utox (which where negative for unauthorized substances).

35. Plaintiff believes that Evelyn Garcia is having the worker come into Plaintiff's apartment and gathering information to forward to someone at the W.L. V.A (most likely Dr. Jones).

36. As well on or about June 14, 2024 Plaintiff visited Dr. Plotkin to refill Plaintiff's medication, whereas Dr. Fotkin requested Plaintiff to provide a urine sample, but instructed Plaintiff that she would not be refilling it's medication matter what the results of the sample revealed, whereas she states in her medical notes (please see Exhibit F. note of Dr. Plotkin for the date 6/14/2024 her decision is based on suspicions of diversion, which is in Plaintiff's permanent record} Dr. Plotkin on June 14, 2024

12

informed plaintiff that she will not provide plaintiff's pain medicine because, as she
states " you are selling the medication", Which is libelous. Plaintiff bewildered ended
the examination.

37. Here patient has had to endure days on end of horrific pain due to the Egregious,
arbitrary and unwarranted actions of Dr. Flokin.

38. Finally, Due to the egregious acts of Defendants, Plaintiff has had to use an outside
surgeon which has injured Plaintiff due to their (the outside surgeon) incompetence
and negligence use of the Valley Presbyterian facility.

39. Here, Plaintiff contends Defendants Deprivation of its V.A benefits and Civil Rights
have cause irreparable Damage, wherefore now Plaintiff seeks redress.

40. On June 10th Plaintiff was forced to go to the West Los Angeles Veteran Administration
emergency room due to its knee giving out (from the mal-practice of L.A bone and Joint
institute). When Plaintiff was complete with the E.R Plaintiff went to the same day
medical care unit, where Plaintiff encountered a VA African American front desk clerk
name unknown (believed to be Amber). Plaintiff asked the clerk what time
the aforementioned unit would begin taking same day appointments, here Amber stated
that she doesn't know, she doesn't work here (for the VA), wherefore Plaintiff left the
unit only to return to see Amber working at the counter.

41. When Plaintiff confronted the Amber and instructed her that he was a Disabled United
States Marine Corp. Veteran, and his Father was a two war Veteran, Amber stated
abruptly and disrespectfully, "Like I Care!".

42. Here Plaintiff could only ponder at how indifferently arrogant her statement was and that
if I was in full cardiac arrest I would be in real trouble.

43. Furthermore, her statement was so loud and noticeable that all in the clerks station and
waiting room heard it and only a Veteran patient said a word about it, which shows an
indifferent climate to the egregious distain and lack of respect of some WLAVA
employees.

44. Plaintiff at this time talked to another Veteran (also unknown by name) who stated that earlier Amber was extremely rude to him as well.

45. Plaintiff remembers getting a feeling that if she was to continue to have her way that she would not discharge her VA duties ever again, leaving Veterans without their rightfully earned benefits.

46. Plaintiff was so upset I left before cancelling my same day appointment.

47. Next, Plaintiff was referred to Orthopedics at the WLAVA and was evaluated by Cecil Reyes P.A.

48. On June 18, 2025 Plaintiff Finally was able to view the Ex-ray of its patella repaired by L.A Bone and Joint.

49. The Ex ray displayed a superior displacement of about the size of the patella itself (redundant to the femur), which in Plaintiff's medical professional opinion this renders the patella practically useless to its foremost job, which is to protect the knee joint. (please see Exhibit G)

50. Plaintiff contends that the patella is the bone which protects the knee joint. By Plaintiff's patella placement proximal (by 1-1 1/2 its size) to the patellar surface of the femur, its function to protect the knee joint is drastically compromised, wherefore, to its task severely insufficient.

51. For the aforementioned, Plaintiff is of the opinion that Cecil's advise (not to repair) was inappropriate. Whereas the evaluation does not count for the functionality of the knee joint, furthermore the note of "non dependent cocaine abuse" was highly inappropriate, unwarranted and defamatory which has caused Plaintiff severe emotional distress. (Please See Exhibit H Cecil's note of 6-18-2025)

52. Here, Plaintiff contends this is a tactic used by the WLAVA employees to deny rightfully deserved Veteran benefits and cause emotional distress to targeted Veterans such as myself.

53. On or about 05.10.2024 Plaintiff was admitted to Valley Presbyterian Hospital for patella tendon rupture repair.

14

54. Plaintiff was prepared by the intake nursing staff, where Plaintiff informed the staff that it consumes four (4) 10mg Hydrocodone 325mg acetaminophen tablets per day (please see Exhibit A2 Plaintiff's reported medications) for back, bi-lateral knee repair and arthritis.

55. The nursing staff conveyed the for mentioned information to both Dr. Didinger and Dr. Jalali. Furthermore, the intake staff failed to conduct E. K.G.

56. As well, Plaintiff conveyed to both Dr. Didinger and Dr, Jalali the horrific/severe post-surgery pain associated with Plaintiff's previous two (2) patella tendon rupture repairs, whereas they both acknowledged the potential for severe post-surgery trauma and they both gave Plaintiff assurances that the aforementioned post-surgery trauma would be avoided by the use of strong pain medication.

57. Here, in the first instance, Defendants recklessly a administered Fentanyl to anesthetize Plaintiff (one of the most dangerous drugs to be commingled with opioids). (please see Exhibit B2 Plaintiff's medication administration summary)

58. Here Defendants were fully aware of Plaintiff's regular strong Hydrocodone regiment, which if commingled (Fentanyl and Hydrocodone), is potentially lethal and at the very least could inflict long term damage.

59. Plaintiff has been highly lethargic and has had severe emotional distress contemplating what long term effects this potentially lethal combination will have on Plaintiff.

60. Furthermore, Plaintiff conferred with Defendants about the aforementioned potential for post-surgery trauma, whereas when Plaintiff awoke from the applied anesthesia Plaintiff was in unbearable pain and enduring severe trauma, wherefore Plaintiff actually begged Dr. Didinger to administer the strongest pain medication available.

61. Dr. Didinger only authorized 5mg of opioids (Note Plaintiff's tolerance is adapted to 10mg 4 times a day of opioids without surgery).

62. Here, after reading the notes, Plaintiff realized that he may have coded from the opioids and Fentanyl in it's blood system.

63. Plaintiff is of the contention that Dr. Didinger may have been afraid to give Plaintiff stronger medicine due to her experience with Plaintiff's trauma in surgery, leaving Plaintiff to suffer for her negligence.

64. The pain medication that Dr. Didinger prescrided is administered to combat mild to moderate pain/trauma, whereas Plaintiff was enduring severe intolerable pain.

65. Furthermore, as Plaintiff lie in the recovery room bed writhing in pain in the presents of unfamiliar faces, Plaintiff could only recognize the humiliating "looks" conveyed to him.

66. The prescribed medication solely lacked the adequacy to subdue Plaintiff's pain, whereas Dr. Didinger refused to prescribe a stronger dose of pain medication to combat Plaintiff's intolerable pain, leaving Plaintiff forced to self-medicate using its own Hydrocodone and ice (please see exhibit C2 Plaintiff's occurred and report summary), wherefore, Plaintiff was enduring severe pain/trauma, embarrassment and severe emotional distress.

67. As well, Plaintiff arrived at its home to find that its upper lip and teeth were damaged, wherefore, Plaintiff took pictures of the aforementioned damage to convey to Defendants at a later date for redress. (pictures will be forwarded to the Court and Defendants for review upon request).

68. Under further review, Plaintiff has discovered the indication of trauma while being anesthetized by the administration of Fentanyl (rigors: severe chills with violent shivering) (pruritus: severe itching) while approximately 90mg to120mg of Hydrocodone course through Plaintiff's system. (please see medical notes as exhibit D2).

69. Wherefore, at present, Plaintiff has begun a new medication for severe itching (please see exhibit E2 new prescription).

70. Defendants have breached the "Do No Harm" code in a most extreme manner.

**NOTE: EITHER THE AFOREMNETIONED STAFF SCORED VERY LOW IN
CHEMISTRY (wherefore they should not possess a medical license) OR THEY OUT
RIGHT WERE ATTEMPTING TO KILL ME**

71. Furthermore, Plaintiff attempted to serve a demand letter for the aforementioned
allegations, violations and damages on SHANIN S. RAD M.D, P.C (the listed business
owner and agent for service of process for L.A Bone and Joint institute) (please see
Exhibit F2) but he refused to receive the documents and threw the documents at
Plaintiff stating " I don't understand this, take this," which further compounded
Plaintiff's Emotional Distress .

72. Here front desk employee merely stamped the proof of service with an internal stamp
(please see Exhibit G2). And sent Plaintiff on its way.

73. On May 28, 2025 Plaintiff was finally able to be evaluated by Physical Therapy, whereas
the Physical Therapist informed Plaintiff that its patella was superiorly displaced by
about 1 or 1 and 1/2 inches.

74. Plaintiff on June 18, 2025 Finally was able to view the Ex-ray of its patella repaired by
L.A bone and Joint Institute. (please see Exhibit H2)

75. Plaintiff contends that the patella is the bone which protects the knee joint. By
Plaintiff's patella placement proximal (by 1-1 1/2 its size) to the patellar surface of the
femur, its function to protect the knee joint is drastically compromised, wherefore, to its
task severely insufficient.

**FIRST CAUSE OF ACTION**

**Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

1. Plaintiff incorporate by reference the foregoing paragraphs of this Complaint as though
fully set forth herein.

2. Plaintiff have disabilities within the meaning of the Rehabilitation Act and are
otherwise eligible for the health care and housing benefits offered by the VA, a federal
agency.

3. Defendants administer the benefits offered by VAGLAHS in a manner that denies veterans the benefits of VAGLAHS services, programs, or activities in the most integrated setting appropriate to their needs.

4. Defendant did in fact violate 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 in an attempt to constructively evict Plaintiff from its V.A benefits by its failure to righteously adhere to a legitimate agreement presented by Plaintiff in good faith to The United Staes Marine Corp. Wherefore Plaintiff has been severely injured due to Defendant's extreme and reckless conduct, which is the direct and proximate cause of Plaintiff's aforementioned injuries.

5. As well, Plaintiff contends that Defendant's conduct is extreme, outrageous, willful, malicious, wanton, reckless, oppressive, and justify the award of punitive damages.

## SECOND CAUSE OF ACTION

### Negligence 28 U.S.C §1346, §§2671-2680

6. Plaintiff realleges and incorporates as though fully set forth herein paragraphs of this complaint.

7. At all material times, Defendants owed a duty of care and supervision to plaintiff as a vetted Veteran.

46. Defendants were negligent and breached its duty of care to Plaintiff in the following particulars:

a. Failing to discharge its mandatory duty to report all allegations of abuse.

b. Failing to adequately discipline staff for breaching their duty to care to promptly report allegations of abuse.

## THIRD CAUSE OF ACTION

### Violation of the Emergency Medical Treatment and Active Labor act, Section 1867 of the Social Security act , 42 U.S.C § 1395dd

47. Plaintiff incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

48. Defendant refused to discharge its duty of care to administer emergency care to Plaintiff.

49. The conduct engaged in by Defendant and staff was outrageous and transgressed the bounds of socially tolerable behavior.

50. Furthermore, Defendant's extreme and outrageous conduct was willful, malicious, wanton, reckless, and oppressive, which justify the awarding of exemplary and punitive damages.

## FOURTH AND FIFTH CAUSE OF ACTION

### Intentional and Negligent Infliction of Emotional Distress

51. Plaintiff incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

52. Defendant knew or should have Known with substantial certainty that its conduct and the conduct of its staff would cause severe mental injury and emotional distress to Plaintiff.

53. The conduct engaged in by Defendant and staff was outrageous and transgressed the bounds of socially tolerable behavior.

54. As a result of Defendant's actions, Plaintiff was physically, mentally and emotionally damaged, and has yet to receive its Constitutionally guaranteed Veteran benefits.

55. Defendant has damaged the reputation of Plaintiff by making several false allegations of illegal activity.

56. Wherefore Plaintiff has been severely injured in finances, mind, and body, due to Defendant's extreme and reckless conduct, which is the direct and proximate cause of Plaintiff' aforementioned damages.

57. As well, Plaintiff contends that Defendant's conduct is extreme, outrageous, willful, malicious, wanton, reckless, oppressive, and justify the award of punitive damage

58. Defendant had a duty of care, but failed to discharge that duty, wherefore Plaintiff has been severely injured due to Defendant's extreme and reckless conduct, which is the direct and proximate cause of Plaintiff's aforementioned injuries.

59. As well, Plaintiff contends that Defendant's conduct is extreme, outrageous, willful, malicious, wanton, reckless, oppressive, and justify the award of punitive damages.

60. As Plaintiff is tasked with administrating the Estate of both deceased parents (from the Covid 19 virus) Father a Two War Veteran, and Mother an Executive Secretary and H and R Block subsidiary owner. Defendant has manipulated Plaintiff into a state of

emotional distress intentionally and negligently without regard to the harm it would cause to Plaintiff.

61. Defendant's conduct has caused Plaintiff to suffer depression, embarrassment, and sleepless nights contemplating the perception that has been bestowed on it by Defendant.

62. Plaintiff contends this extreme and outrageous conduct by defendant was done for the purpose of causing Plaintiff to suffer undue humiliation, and mental anguish with reckless disregard of the probability of causing Plaintiff physical and emotional distress which has caused Plaintiff to suffer in the mind.

63. Furthermore, Defendant's extreme and outrageous conduct was willful, malicious, wanton, reckless, and oppressive, which justify the awarding of exemplary and punitive damages.

**WHEREFORE PLAITIFF PRAYS FOR JUDGMENT AS FOLLOWS**:

**FIRST CAUSE OF ACTION**:

1. Declare that Defendants administer Plaintiff's constitutionally guaranteed Veterans benefits in a manner that does not discriminate against veteran in violation of Section 504 of the Rehabilitation Act of 1973.

2. Enjoin Defendants from failing to provide Plaintiff with appropriate Permanent Housing near the WLA Campus so Plaintiff can reasonably have access to its much-needed health care benefits for which it is eligible.

3. Mandate That all Defendants discharge their duty of care to report and have Investigated all reports of Plaintiff's allegations of elder abuse. As well evaluate and perform all necessary medical procedures without delay, gamesmanship nor harassment.

4. For punitive damages allowable under 42 U.S.C.A. § 1983 in an amount appropriate to punish the Defendants and deter others from engaging in similar misconduct.

## SECOND CAUSE OF ACTION:

1.  For Damages at least in the sum of $150,000.00 or in an amount to be proven at the time of trail.

2.  For punitive damages allowable under 42 U.S.C.A. § 1985 in an amount appropriate to punish the Defendants and deter others from engaging in similar misconduct.

## THIRD CAUSE OF ACTION

1.  For Damages at least in the sum of $100,000.00 or in an amount to be proven at the time of trail.

2.  For punitive damages allowable under 42 U.S.C.A. § 1985 in an amount appropriate to punish the Defendants and deter others from engaging in similar misconduct.

## FOURTH AND FIFTH CAUSE OF ACTION:

1.  For Damages at least in the sum of $1,000,000.00 or in an amount to be proven at the time of trail.

2.  For punitive damages allowable under 42 U.S.C.A. § 1985 in an amount appropriate to punish the Defendants and deter others from engaging in similar misconduct. These punitive damages derive from\. Whereas, no penalties, punishments nor sanctions were imposed. Whereby this indifference facilitated the egregious agenda of the aforementioned Defendants

3.  As to all peripheral defendants, Plaintiff sues these entities for a Judgement of review or accept liability for the aforementioned egregious conduct of the primary defendants. A Judgement for appropriate discipline to insure understanding of "Do no Harm" and deter others from engaging in the same misconduct, Or/and, accept the liability of Defendant's egregious actions.

Furthermore, Plaintiff request the Court issue an Order that Defendant reimburse Plaintiff for all cost of the suit incurred herein and for such cost and other further relief as the Court may deem proper.

I, PHILLIP E. HUGHES SR., am the Plaintiff in the above-entitled action. I have read
and reviewed the foregoing document I intend to use to present my case and
know the contents thereof. The same is true of my own knowledge, except as to those
matters that are therein stated on information and belief, and concerning those matters,
I believe it to be true.

    I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct.

Dated: 06.27.2025                               PHILLIP E. HUGHES

                                                    In Propria Persona

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

# EXHIBIT A

1

If you're ever in crisis and need to talk to someone right away, call the Veterans Crisis Line at **988**. Then select 1.

# ORTHOPEDICS RESIDENT PROGRESS/

Date entered: February 27, 2024

## Details

**Location**
WEST LA VAMC

**Written by**
DANIEL CHIOU

**Signed by**
DANIEL CHIOU

**Date signed**
February 27, 2024

## Note

LOCAL TITLE: ORTHOPEDICS RESIDENT PROGRESS/
STANDARD TITLE: ORTHOPEDIC SURGERY NOTE
DATE OF NOTE: FEB 27, 2024@11:59 ENTRY DATE: FEB 27, 2024@11:59:21
AUTHOR: CHIOU,DANIEL EXP COSIGNER: STAVRAKIS,ALEXANDRA I
URGENCY: STATUS: COMPLETED

Attending Supervision:
Discussed with attending physician: Stavrakis, Alexandra I, MD

Discharge planning was discussed. The plan is for the patient to be discharged
to: Home


HPI: 58yo MALE who previous tore his patellar tendons of B/l LEs. R in 2008, L
in 2005, which were both managed with surgery s/p fall on 1/23/24 with L patella
tendon re-rupture


This AM, patient was upset that he had to get a utox. He states that he had
urinated already when he came to PreOp and was upset that the nursing staff
didn't tell him about the utox. We explained that we could give him an IV and
start IV fluids to help him urinate. To this he adamantly refused.


He was upset that he had to get a utox taken today and we explained that on
chart review, given his cocaine use the anesthesia team had wanted a repeat utox
given the concern for the dangers of anesthesia with substance use. Patient
stated, "my daughter is outside and I can leave". We discussed with anesthesia
and the patient, and he elected to leave. Prior to leaving he asked that this
diagnosis of substance abuse be removed, to which I responded that I was not
able to do that. We also discussed the risks of continued waiting for his tendon
to repair, and the dangers of delaying his case given his own refusal

to provide

a urinary sample. He understood the risks.


Daniel Chiou

PGY 3 Ortho


/es/ DANIEL CHIOU

ORTHOPEDIC SURGERY RESIDENT

Signed: 02/27/2024 12:05


/es/ ALEXANDRA I STAVRAKIS

ATTENDING SURGEON

Cosigned: 02/29/2024 11:47

If you're ever in crisis and need to talk to someone right away, call the Veterans Crisis Line at **988**. Then select 1.

# PRE-OPERATIVE NURSING ASSESSMENT

Date entered: February 27, 2024

## Details

**Location**
WEST LA VAMC

**Written by**
MICHELLE F CARTAS

**Signed by**
MICHELLE F CARTAS

**Date signed**
February 27, 2024

## Note

```
LOCAL TITLE: PRE-OPERATIVE NURSING ASSESSMENT
STANDARD TITLE: NURSING PRE OPERATIVE E & M NOTE
DATE OF NOTE: FEB 27, 2024@08:47 ENTRY DATE: FEB 27, 2024@08:47:17
AUTHOR: CARTAS,MICHELLE F EXP COSIGNER:
URGENCY: STATUS: COMPLETED
```

*** PRE-OPERATIVE NURSING ASSESSMENT Has ADDENDA ***

Feb 27,2024@08:23
Arrived from: Home
Arrived via:Ambulatory
Arrived to: 4East-A
Assigned Bed # 15


Surgical Service:ORTHOPEDIC SURGERY
Planned Procedure:LEFT PATELLA TENDON REPAIR



Vital Signs:
T: 97.2 F [36.2 C] (02/27/2024 08:23)
P: 73 (02/27/2024 08:23)
R: 17 (02/27/2024 08:23)
B/P: 176/121 (02/27/2024 08:23)
Pain: 3 (02/27/2024 08:23)
O2 Sat %: 99% (02/27/2024 08:23)


Mental Status:Alert and oriented to person,place and time

Patient states following surgery that:
Will be accompanied home by
Name: WHITNEY
Relationship: DAUGHTER
Contact phone number: 9094494646
Comment:
Elopement Risk Assessment:
Low


NPO since: Feb 26,2024@15:00

Confirmation of Heart Medications taken on the day of surgery PRIOR TO ARRIVAL:
No heart medication indicated on the Pre-Operative Clinic Surgery Instructions

Heart Medication Taken: No heart medications indicated on the Pre-Operative
Surgery Instructions.

Other medications taken on the day of surgery PRIOR TO ARRIVAL:
Other HYDROCODONE

Allergies: Patient has answered NKA

Pacemaker: No

Showered prior to arrival: Yes
Was approved product for pre-operative skin antisepsis completed by nursing
staff?

Not indicated

Health changes since last clinic visit? No

Have you had any pressure ulcers or skin problems in the past?
None

Skin Evaluation:

Occiput: None
Sacrum: None
Right Elbow: None
Left Elbow: None
Right Heel: None
Left Heel: None

Interventions:


N/A

Nursing Diagnosis:
KNOWLEDGE DEFICIT R/T: Pre-op plan of care, Procedures/treatments,
Post-op Pain
Management, Nurse routines, Environment

EXPECTED OUTCOMES/GOALS: Pt/SO will verbalize and/or demonstrate
understanding
of education

INTERVENTIONS/APPROACHES: Assess Pt/SO readiness/ability to learn,
Assess
barriers to learning, Orient Pt/SO to room/unit/visiting routines,
Explain
impending test/procedures, Encourage Pt/SO to verbalize
questions/concerns


EVALUATION:

Goal Met


Nursing Diagnosis: Anxiety related to:Surgery

Plan of Care:MANAGE PRE OP CARE

Plan & Expected Outcomes/Goals: Pt will verbalize decreased feeling
of anxiety
by time of discharge.


Interventions/Approach: Assess level of anxiety, Encourage pt. to
verbalize
feelings, Answer questions appropriately and concisely, Encourage pt.
input
into plan of care


/es/ MICHELLE F CARTAS ,RN
BSN,RN-BC
Signed: 02/27/2024 08:56

02/27/2024 ADDENDUM STATUS: COMPLETED
1115 PATIENT LEFT THE UNIT RIGHT AFTER SPEAKING TO THE MD. OR AND MD
MADE AWARE.

/es/ MICHELLE F CARTAS ,RN
BSN,RN-BC
Signed: 02/27/2024 12:36

# EXHIBIT B

# Consult Requests

Printed On Mar 1, 20

PT:      13.0 SECONDS        FEB 14, 2024 13:07 (WLA)
INR:     0.98 RATIO          FEB 14, 2024 13:07 (WLA)

CHEM-7 & RELATED STUDIES:

*[handwritten: Drug abus. Surgen Said That the Node regenerates (See Note)]*

Na:        140 mmol/L        FEB 14, 2024 13:07
K:         4.1 mmol/L        FEB 14, 2024 13:07
Cl:        106 mmol/L        FEB 14, 2024 13:07  *[handwritten: That Says 10yrs ag.]*
CO2:       24.7 mmol/L       FEB 14, 2024 13:07
BUN:       16 mg/dL          FEB 14, 2024 13:07
Calcium:   9.7 mg/dL         FEB 14, 2024 13:07  *[handwritten: If That is a]*
Magnesium: 1.9 mg/dL         FEB 14, 2024 13:07
Phosphorus: 3.8 mg/dL        FEB 14, 2024 13:07

Creatinine: 1.13 mg/dL       FEB 14, 2024 13:07  *[handwritten: regenerated node]*
eGFR:      75                FEB 14, 2024 13:07  *[handwritten: Then the System]*
CrCl:      66.62

GLU:       116 mg/dL  H      FEB 14, 2024 13:07  *[handwritten: must Know What ye]*
Hemoglobin A1C: 6.0 %  H     FEB 14, 2024 13:07  *[handwritten: It is and How many]*

TSH:       1.283 uIU/mL      JAN 11, 2017 12:07  *[handwritten: years The Dirty d]*

Albumin:   4.7 g/dL          FEB 14, 2024 13:07  *[handwritten: was Gathered (is t]*

*[handwritten: System]*

STUDIES (if indicated)

EKG (2/14/24): SR 96 bpm, R axis shift, RVH (criteria in I, AVF, V1), nonspecific

TW abn

*[handwritten: A.I. System]*

ASSESSMENT AND PRE-OPERATIVE PLAN

ASA Physical Status: # 3

SUMMARY OF MANAGEMENT CONCERNS:

PHILLIP E HUGHES is a 58 year old MALE with
o H/o b/l patellar tendon rupture s/p surgical repair, new L patellar tendon
  rupture on 1/16/24, awaiting re-do repair
o HTN, no meds, avg BP 120-130s/80s
o GERD, on omeprazole  *[handwritten: See Note]*
o HL, on fish oil only
o H/o cocaine abuse > 10 yrs ago per chart, pt denies

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)

HUGHES, PHILLIP E
8727 S SAN PEDRO ST APT 4
LOS ANGELES, CALIFORNIA  90003

VISTA Electronic Medical Documentation
Printed at WEST LA VAMC

# EXHIBIT C

1

If you're ever in crisis and need to talk to someone right away, call the Veterans Crisis Line at **988**. Then select 1.

# S&PC CASE MGMT SURGERY CONFIRMATION/

Date entered: February 26, 2024

## Details

**Location**
WEST LA VAMC

**Written by**
EDWINA M WHITNEY MASON

**Signed by**
EDWINA M WHITNEY MASON

**Date signed**
February 26, 2024

## Note

LOCAL TITLE: S&PC CASE MGMT SURGERY CONFIRMATION/
STANDARD TITLE: CASE MANAGER NOTE
DATE OF NOTE: FEB 26, 2024@11:59 ENTRY DATE: FEB 26, 2024@12:00:02
AUTHOR: WHITNEY MASON,EDWIN EXP COSIGNER:
URGENCY: STATUS: COMPLETED


S&PC CASE MGMT SURGERY CONFIRMATION/

TYPE OF SURGERY: LEFT PATELLA TENDON REPAIR

ATTENDING SURGEON: HAME

RESIDENT: SHI


[X] Surgery Date Feb 27,2024

[X] Surgery confirmed on

[X] Report to Same Day Surgery on 4East A at 5:30am

[ ] Unable to make contact

[ ] Attending notified:

[ ] Outcome:


[X ] PREOPERATIVE INSTRUCTIONS/PRE-OPERATIVE TEACHING REVIEWED

[ X] NPO after midnight (if indicated):

[X ] Take shower, including washing of the hair before coming to the hospital. Remind patient to use Hibiclens. Veteran was reminded not to use hair spray on the AM of surgery.

[X ] Prep for surgery:

[ X] Pre-op instructions reviewed, verbalized understanding:

[X ] Do not bring any medications from home. Medications brought in from

home will be taken away and not returned.

[X ] Specific instructions/preoperative teaching which was reviewed with the Veteran:


[X ] TRANSPORTATION

Veteran has responsible driver:

Responsible adult to accompany patient home following procedure:

Patient's driver's name and phone: DAUGHTER-WHITNEY HUGHES

909449464646

Sol Transportation:

Other:

[ X] Patient Post-operative Level of Care is Planned Observation:


\*\*\*Plan for transportation the next morning has been arranged:
Specify: DAUGHTER-WHITNEY HUGHES 909449464646


[ X] REVIEWED IF ANY CHANGES IN MEDICAL CONDITION SINCE PREOPERATIVE
CLEARANCE

[X ] None

[ ] Any signs of infection ( i.e. Temp>101F, redness, swelling)

[ ] Any nasal congestion, sore throat, fevers, or muscle aches

[ ] Developed a persistent cough

[ ] Nausea/vomiting

[ ] Any non-removable monitoring devices (i.e. GPS tracking device/
ankle monitor)

[ ] Any new illness or injury

[ ] Any recent emergency room or urgent care visit

[ ] Any rash near or on the site where you will be having your
surgery?


Please continue to take all your medications as usual, up until the
day of your surgery/procedure, EXCEPT FOR THE FOLLOWING:


Seven (7) days before surgery, please STOP:

--------------------------------------------

- Aspirin and aspirin-containing products

- NSAIDS taken by mouth (ibuprofen, naproxen, meloxicam, diclofenac,
celecoxib)

- Fish oil

- Herbal supplements


======================================================================

INSTRUCTIONS FOR THE DAY OF THE SURGERY/PROCEDURE

======================================================================

1. DO NOT EAT OR DRINK ANYTHING (including gum and hard candy) AFTER
MIDNIGHT PRIOR TO SURGERY (with the exception of any medications
listed below in section #2).

2. On the morning of surgery, take ONLY the following medications with
a sip of water (no other food or drink):

- Omeprazole
- Hydrocodone/acetaminophen, if you need it for pain

** Do NOT take any other oral medications on the morning of surgery,
other than those listed above **

PT AGREED TO ABIDE BY THESE INSTRUCTIONS. PT STATES HE'S RECEIVED THE
HIBICLENS
SOLUTION. HE WAS TEXTED WITH HIS PERMISSION THE INSTRUCTIONS FOR
HIBICLENS SUAGE
ON HIS 323 NUMBER.

/es/ EDWINA M WHITNEY-JONES
RN
Signed: 02/26/2024 12:11

# EXHIBIT D

If you're ever in crisis and need to talk to someone right away, call the Veterans Crisis Line at **988**. Then select 1.

# CASE MANAGEMENT SURGICAL NOTE

Date entered: February 8, 2024

## Details

**Location**
WEST LA VAMC

**Written by**
AMI G MEHTA

**Signed by**
AMI G MEHTA

**Date signed**
February 8, 2024

## Note

```
LOCAL TITLE: CASE MANAGEMENT SURGICAL NOTE
STANDARD TITLE: SURGERY CASE MANAGER NOTE
DATE OF NOTE: FEB 08, 2024@09:42 ENTRY DATE: FEB 08, 2024@09:42:29
AUTHOR: MEHTA,AMI G EXP COSIGNER:
URGENCY: STATUS: COMPLETED
```

CM reviewed chart and noted Vet has not yet completed labs and EKG in order to

get a preop appointment. Ortho chief resident has moved Vet's surgery date

tentatively to 2/28/24 to allow more time for Vet to complete preop. CM called

Vet in an attempt to notify about surgery date change and to follow up on status

of completing labs/EKG. No answer at either number listed on CPRS, CM left HIPAA

compliant voicemails on both numbers requesting a call back.


/es/ AMI G MEHTA

REGISTERED NURSE

Signed: 02/08/2024 09:43

# EXHIBIT E

1

If you're ever in crisis and need to talk to someone right away, call the Veterans Crisis Line at **988**. Then select 1.

# DRUGS OF ABUSE SCREEN URINE [WLA]

Date and time collected: March 21, 2024, 10:16 a.m.

## Details about this test

**Type of test**
Chemistry and hematology

**Site or sample tested**
URINE (Spot)

**Ordered by**
JENNIFER BLAIR PLOTKIN

**Location**
WEST-LA.MED.VA.GOV

**Lab comments**
N/A
The toxicology screening results are only to be used for medical (treatment) purposes. Unconfirmed screening results must not be used for non-medical purposes (ex. Employment testing, Legal testing).

## Results

Your provider will review your results and explain what they mean for your health. To ask a question now, send a secure message to your care team.

**Standard range**

The standard range is one tool your providers use to understand your results. If your results are outside the standard range, this doesn't automatically mean you have a health problem. Your provider will explain what your results mean for your health.

## Creatinine (Spot Urine DOA)

**Result**
18 mg/dL

**Reference range**
None recorded

**Status**
final

**Lab comments**
A urine creatinine level of less than 20 mg/dL can suggest a repeat testis needed if there is clinical suspicion of pre-specimen dilution. Alevel less than 2 mg/dL should raise suspicion of post-specimendilution.  If there are questions regarding a specific patient's testresults, please contact the Chemistry Lab.

## Benzodiazepines Qualitative

**Result**
NEGATIVE

**Reference range**
None recorded

**Status**
final

**Lab comments**
None recorded

## Amphetamines Qualitative

**Result**
NEGATIVE

**Reference range**
None recorded

**Status**
final

**Lab comments**
None recorded

## Cocaine Qualitative

**Result**
NEGATIVE

**Reference range**
None recorded

**Status**
final

**Lab comments**
None recorded

## Opiates Qualitative

**Result**
NEGATIVE

**Reference range**
None recorded

**Status**
final

**Lab comments**
None recorded

## Cannabinoids Qualitative

**Result**
NEGATIVE

**Reference range**
None recorded

**Status**
final

**Lab comments**
None recorded

## Buprenorphine Qualitative

**Result**
NEGATIVE

**Reference range**
None recorded

**Status**
final

**Lab comments**
None recorded

## Oxycodone Qualitative

**Result**
NEGATIVE

**Reference range**
None recorded

**Status**
final

**Lab comments**
None recorded

## Methadone Qualitative

**Result**
NEGATIVE

**Reference range**
None recorded

**Status**
final

**Lab comments**
None recorded

## Urine Ethanol Quantitative

**Result**
<10

**Reference range**
None recorded

**Status**
final

**Lab comments**
None recorded

## Fentanyl Qualitative

**Result**
NEGATIVE

**Reference range**

None recorded

**Status**
final

**Lab comments**
None recorded

# EXHIBIT F

HUGHES, PHILLIP E
Date of Birth: 12 Nov 1965

HUGHES, PHILLIP
Filled: 02/23/2024
Sold: Not Reported
ZOLPIDEM TARTRATE
Refill 1 of 1
10 MG
TAB
Days: 30
Qty: 30
Daily: N/A
Total: N/A
FLORES, JACOB N MD
DEA: BF5085267
HERBERT'S PHARMACY
Pharmacy #: PHY34171
Serialized Rx: EEEEEEEE
Pharmacy Rx: 04168538

**Please note that the above information does not reflect recent prescriptions
filled as there is a delay between filling of prescriptions and entry into the
CURES database system**

/es/ REBECCA LAHETH SAMUEL
Attending Physician
Signed: 06/14/2024 10:59

| | |
|---|---|
| Date/Time: | 14 Jun 2024 @ 1052 |
| Note Title: | PRIMARY CARE HISTORY & PHYSICAL |
| Location: | VA Greater Los Angeles HCS |
| Signed By: | PLOTKIN,JENNIFER BLAIR |
| Co-signed By: | PLOTKIN,JENNIFER BLAIR |
| Date/Time Signed: | 14 Jun 2024 @ 1525 |

**Note**

LOCAL TITLE: PRIMARY CARE HISTORY & PHYSICAL
STANDARD TITLE: PRIMARY CARE H & P NOTE
DATE OF NOTE: JUN 14, 2024@10:52   ENTRY DATE: JUN 14, 2024@10:52:42
  AUTHOR: PLOTKIN,JENNIFER BL EXP COSIGNER:
  URGENCY:                    STATUS: COMPLETED

  *** PRIMARY CARE HISTORY & PHYSICAL Has ADDENDA ***

CC: Vesting

HPI: Mr. Hughes is a 58 YOM w/ hx of multiple patella tendon repairs, HLD, GERD,

h/o SUD.

HUGHES, PHILLIP E
Date of Birth: 12 Nov 1965

Behavioral flag read and acknowledged. Pt did not become loud or inappropriate
during this encounter.

Pt reports hx of pain in the back, knee, and GERD. Food just comes back up some
times. Abdominal pain has been ongoing for 14/15 years. Belly pain worse w/
ibuprofen. Denies blood in the stool, black tarry stool. He did have blood in
the stool 6 years ago. No weight loss. Weight gain in fact b/c he can't be
active d/t ortho injury. Endorses nausea intermittently. No dysphagia.

He desires to transfer his care to the VA. I shared that I would not be filling
his chronic opoid rx b/c I was concerned about diversion given inappropriately
negative UTOX, his use disorder history, and his prior overlapping rxes. I
recommended he be seen by a pain specialist and transitioned to a medication
with less misuse potential such as buproprion or methadone. I instructed the pt
to provide a urine sample today. Pt was dissatisfied with this plan and
terminated the visit.

ROS:
As above

PMH:

ACTIVE PROBLEMS
Phase of life problem
Foot pain
Nondependent cocaine abuse
Hypertrophic scar (SNOMED CT 198430
Adj Reac W/Mixed Emotion
Vitamin D deficiency (SNOMED CT 347
Abnormal liver function (SNOMED CT
Internal hemorrhoids without mentio
Male erectile disorder (ICD-9-CM 30
Left knee pain (SNOMED CT 468261000
Lateral Epicondylitis (Tennis Elbow
Ulnar Neuropathy (ICD-9-CM 354.2)
Gastroesophageal reflux disease (SN
Hypertensive disorder
Interpersonal problems (ICD-9-CM V6
Tendinitis * (ICD-9-CM 726.90)
Issue of Repeat Prescriptions (ICD-
Substance Abuse * (ICD-9-CM 305.90)
Migraines (ICD-9-CM 346.90)
Hyperlipidemia (SNOMED CT 55822004)
Unspecified Housing or Economic Cir
Counseling for perpetrator of spous
Internal derangement of knee (ICD-9
Joint Effusion (ICD-9-CM 719.00)

MEDS:

Medication reconcilliation completed.

# EXHIBIT G

If you're ever in crisis and need to talk to someone right away, call the Veterans Crisis Line at **988**. Then select 1.

*Plaintiff Phillip P. Hughes' Patella*

# Images: KNEE: LEFT ROUTINE (AP/LAT)

Date and time performed: June 13, 2025 4:41 a.m.

Showing 1 to 2 of 2 images

**Image 1 of 2**



**Image 2 of 2**

*← Note the patella Placement*

# How to share images with a non-VA provider

The best way to share these images with a non-VA provider is to ask your VA care team to share them directly.

If you want to try sharing these images yourself, you can download them as DICOM files in a ZIP folder.

Here's what to know:

- Your non-VA provider may not be able to accept these DICOM files from you. They may require your VA care team to share them directly.
- Providers use special software to view DICOM files, so you may not be able to view them on your device.
- These are large files that take a lot of storage space on your device. So we recommend downloading on a computer instead of a mobile phone.
- If you're using a public or shared computer, remember that downloading saves a copy of your files to the computer you're using.

normal knee x-ray

explore with
SEARCH

All    **Images**    Video    Filter

 Knee Joint X-ray
 **Arthritic Knee** X-ray
 normal knee x-ray vs **Osteoarthritis**
 **Normal Right** Knee X-ray
 **Bone On Bone** Knee X-ray
 **Knee Arthritis** X-ray









Normal K
Stock Pho
34444037

View Im

Normal
Patella →







**Related searches**

 normal knee x-ray Side View
 normal knee x-ray Lateral
 normal knee x-ray Sunrise
normal knee x-ray Adult


















**Related searches**


 normal kne ray with B
 normal kne ray Image

# EXHIBIT H

If you're ever in crisis and need to talk to someone right away, call the Veterans Crisis Line at **988**. Then select 1.

# ORTHOPEDICS NP/PA CONSULT/

Date entered: June 18, 2025

## Details

**Location**
WEST LA VAMC

**Written by**
CECIL S REYES

**Signed by**
CECIL S REYES

**Date signed**
June 18, 2025

## Note

```
LOCAL TITLE: ORTHOPEDICS NP/PA CONSULT/
STANDARD TITLE: ORTHOPEDIC SURGERY PHYSICIAN ASSISTANT NOTE
DATE OF NOTE: JUN 18, 2025@13:06 ENTRY DATE: JUN 18, 2025@13:06:46
AUTHOR: REYES,CECIL S EXP COSIGNER:
URGENCY: STATUS: COMPLETED


Orthopedic Clinic Note

JUN 18, 2025
HUGHES,PHILLIP E
```

8702 SERVICE CONNECTED % - NONE FOUND

NOV 12,1965

59 BLACK OR AFRICAN AMERICANMALE

Chief Complaint: S/P left knee patella tendon repair done at OH 5/10/20?

HPI: This is a 59 MALE who present for follow up visit s/p Left knee
patella

tendon repair from OSH done 5/10/2024. Patient was initially scheduled
for this

surgery on February 27, 2024 but did not transpire because he refuse to
have

Utox urine sample done. Patient states that he had already urinated and
was not

able to urinate again. Patient wants to establishe care with WLA-VA.

S: Patient c/o left knee swelling and mild pain. Patient has been
complaint with

wearing his knee immobilizer and denies any f/c/n/v/cp/sob.

Patient report he is considering revision patella surgery because he
feels his

patella is not functioning correctly. He has had physical therapy and
notice

some improvement. Denies fever, chills, night sweats.

Past Medical History:

ACTIVE PROBLEMS
Exposure to potentially hazardous s
Phase of life problem

Foot pain

Nondependent cocaine abuse

Hypertrophic scar

Adj Reac W/Mixed Emotion

Vitamin D deficiency

Abnormal liver function

Internal hemorrhoids without mentio

Male erectile disorder

Left knee pain

Lateral Epicondylitis

Ulnar Neuropathy

Gastroesophageal reflux disease

Hypertensive disorder

Interpersonal problems

Tendinitis *

Issue of Repeat Prescriptions

Substance Abuse *

Migraines

Hyperlipidemia

Unspecified Housing or Economic Cir

Counseling for perpetrator of spous

Internal derangement of knee

Joint Effusion


ALLLERGIES: Patient has answered NKA


Social History:

MEDS:

Active Outpatient Medications (excluding Supplies):


Active Outpatient Medications Status

==========================================================================

1) CARBAMIDE PEROXIDE 6.5% OTIC SOLN INSTILL 5 DROPS IN        ACTIVE
EACH EAR TWICE A DAY FOR EAR WAX REMOVAL FOR 4 DAYS
2) IBUPROFEN 600MG TAB TAKE ONE TABLET BY MOUTH THREE         ACTIVE
TIMES A DAY AS NEEDED FOR PAIN TAKE WITH FOOD
3) OFLOXACIN 0.3% OPH SOLN 5ML INSTILL 10 DROPS LEFT EAR       ACTIVE
EVERY DAY FOR EAR INFECTION FOR 7 DAYS


Active Non-VA Medications Status

==========================================================================

1) Non-VA FISH OIL CAP/TAB MOUTH ACTIVE
2) Non-VA GABAPENTIN CAP,ORAL MOUTH ACTIVE
3) Non-VA HYDROCODONE BIT 10MG ACETAM 325MG TAB MOUTH ACTIVE
4) Non-VA OMEPRAZOLE CAP,EC MOUTH ACTIVE
5) Non-VA ZOLPIDEM TAB MOUTH ACTIVE


8 Total Medications


Active Outpatient Medications (excluding Supplies)


Active Outpatient Medications
Status



ROS: Denies chest pain, shortness of breath, fever, chills, malaise,
weight
loss, bowel or bladder incontinence
Objective:
Physical Examination:


Left knee exam


On physical exam, patient ambulate without antalgic gait using no

assisted

device. Incision well healed. There is no evidence of wound erythema, no
diffuse soft tissue swelling, calf compartment soft,

+SLR

Range of motion (ROM) Extension 0, Flexion 110,
Negative Pivot shift test
Positive McMurray's test
Negative Lachman's test
Negative Anterior/Posterior drawers test
No laxity to Varus/Valgus stress test
Sensation intact light to touch with two point discrimination. SILT;
sp/dp/su/saph
Muscle strength 5/5 with EHL/FHL/GCS/Peroneals
Vascular: 2+ DP/PT, wwp
Positive straight leg raise (SLR).
Extensor mechanism intact.
Compartments are soft and compressible

Age: 59 Sex: MALE
Temp: 97.8 F [36.6 C] (06/13/2025 07:02)
Pulse: 81 (06/13/2025 07:02)
Resp: 16 (06/13/2025 07:02)
B/P: 122/78 (06/13/2025 07:02)
Pain: 5 (06/13/2025 07:22)

Hemoglobin A1C: 6.0 % H FEB 14,2024 13:07
General: Alert and oriented to person, place and time. Appears to be in
NAD

Recent Imaging:

Impression:

Osteopenia. No acute fracture. Prior surgical defect and hardware
in proximal tibia likely site of prior patellar tendon surgery.

Mild superior displacement of patella with a small ossific
densities and soft tissue swelling in the course of patellar
tendon.

Proximal and distal patellar enthesophytes and osteophytes.

Mild tricompartmental degenerative change and joint space
narrowing.

Soft tissue swelling. No significant joint effusion.

Assessment: This is a 59 MALE who present for follow up visit s/p Left
knee
patella tendon repair from OSH done 5/10/2024. Patient was initially
scheduled
for this surgery on February 27, 2024 but did not transpire because he
refuse to
have Utox urine sample done. Patient states that he had already urinate
and was
not able to urinate again. Patient wants to establishe care with WLA-VA

S: Patient c/o left knee swelling and mild pain. Patient has been
complaint with
wearing his knee immobilizer and denies any f/c/n/v/cp/sob.

Patient report he is considering revision patella surgery because he
feels his

patella is not functioning correctly. He has had physical therapy and notice

some improvement. Denies fever, chills, night sweats.


Patient is requesting surgery for patella reconstruction. I educate pation on

the risk of having another surgery on his patella tendon which include infection. Patient is very ademit about having surgery


Based on the patient's presenting complaints and symptoms, my initial clinical

impression is left knee patella tendon repair done at OH 5/10/2024


Plan:


1. Patient counseled regarding my diagnostic impresssion and care plan
2. Patient education and problem discussed regarding left knee patella injury
3. I had a lengthy discussion with Mr. Hughes and explained to him in detail

that I don't recommend any surgery for his patella tendon because he ha' good

ROM
4. Will refer patient to CITC for evaluation left knee pain
5. Patient education and problem dicsussed regarding his left knee
6. Prior to leaving clinic, all questions answered
7. Patient agrees with treatment plan and understand strict return precautions
8. RTC 2 months for evaluation


Discussed with attending physician
Thomas, Bert J, MD

/es/ CECIL S REYES

Signed: 06/18/2025 13:37

Receipt Acknowledged By:
06/18/2025 13:46 /es/ BERT THOMAS, MD
Orthopedic Surgery Attending

# EXHIBIT A2

1

```
DATE: 05/11/24 @ 0007      Valley Presbyterian Hospital AOM *LIVE*          PAGE 1
USER: BKG DAEMON           Ambulatory Prescriptions and Procedures
```

Patient Name: HUGHES, PHILLIP                    Admission Registration Date: 05/10/24
Unit Number: M001396519                          Discharge Date: 05/10/24
Account Number: V01019222262                     Admitting Physician:
Date of Birth: 11/12/1965    Age/Sex: 58 M       Attending Physician: DIDINGER, TRACEY C MD

Preferred Pharmacy: HERBERT'S PHARMACY 9001 WILSHIRE BLVD BEVERLY HILLS, CA 90211
                    Phone: (310)859-3007 Fax: (310)859-3454
                    Mail Order: N  LTC: N  Specialty: N  24Hrs: N  eRx: Y  EPCS: Y

Reported Medications

Hydrocodone-Acetamin 10-325 mg (Hydrocodone/Acetaminophen) 10 Mg-325 Mg Tablet
Date: May 10, 2024
Entered By: TERI HILL                          Location: SAME DAY SURGERY 2ND FL CIRCLE
Last Taken Information:
   Date/Time: 05/09/24
   Dose:
   Information Source:
   Medication Purpose: SEVERE PAIN
   Comments:

(Omeprazole*) 40 Mg Capsule.dr
Date: May 10, 2024
Entered By: TERI HILL                          Location: SAME DAY SURGERY 2ND FL CIRCLE
Last Taken Information:
   Date/Time: 05/09/24
   Dose:
   Information Source:
   Medication Purpose:
   Comments:

Ambien* (Zolpidem Tartrate*) 10 Mg Tablet
Date: May 10, 2024
Entered By: TERI HILL                          Location: SAME DAY SURGERY 2ND FL CIRCLE
Last Taken Information:
   Date/Time: 05/09/24
   Dose:
   Information Source:
   Medication Purpose: INSOMNIA
   Comments:

# EXHIBIT B2

```
DATE: 05/11/24 @ 0007        Valley Presbyterian Hospital AOM *LIVE*              PAGE 1
USER: BKG DAEMON             Ambulatory Prescriptions and Procedures
```

Patient Name: HUGHES,PHILLIP                    Admission/Registration Date: 05/10/24
Unit Number: M001396519                         Discharge Date: 05/10/24
Account Number: V01019222262                    Admitting Physician:
Date of Birth: 11/12/1965   Age/Sex: 58 M       Attending Physician: DIDINGER,TRACEY C MD

Preferred Pharmacy: HERBERT'S PHARMACY 9001 WILSHIRE BLVD BEVERLY HILLS, CA 90211
                    Phone: (310)859-3007 Fax:   (310)859-3454
                    Mail Order: N  ITC: N  Specialty: N  24Hrs: N  eRx: Y  EPCS: Y

## Reported Medications

Hydrocodone-Acetamin 10-325 mg (Hydrocodone/Acetaminophen) 10 Mg-325 Mg Tablet
Date: May 10, 2024
Entered By: TERI HILL                           Location: SAME DAY SURGERY 2ND FL CIRCLE
Last Taken Information:
    Date/Time: 05/09/24
    Dose:
    Information Source:
    Medication Purpose: SEVERE PAIN
    Comments:

(Omeprazole*) 40 Mg Capsule.dr
Date: May 10, 2024
Entered By: TERI HILL                           Location: SAME DAY SURGERY 2ND FL CIRCLE
Last Taken Information:
    Date/Time: 05/09/24
    Dose:
    Information Source:
    Medication Purpose:
    Comments:

Ambien* (Zolpidem Tartrate*) 10 Mg Tablet
Date: May 10, 2024
Entered By: TERI HILL                           Location: SAME DAY SURGERY 2ND FL CIRCLE
Last Taken Information:
    Date/Time: 05/09/24
    Dose:
    Information Source:
    Medication Purpose: INSOMNIA
    Comments:

```
DATE: 05/11/24 @ 0035   | Valley Presbyterian Hospital PHA *LIVE*        PAGE 1
USER: PHABKGJOB              Medication Administration Summary
```

| | |
|---|---|
| Patient | Responsible Doctor DIDINGER,TRACEY C MD |
| Account Number V01019222262     Location  SDS | Unit Number      M001396519 |
| Age/Sex        58/M           Room | *Registered Date 05/10/24 |
| Status         DEP SDC        Bed | Discharged Date |

```
Height    5 ft    7 in  170.18 cm              Body Surface Area   2.01 m2
Weight  184 lb  15.49 oz   83.9 kg
Hem-Onc No
```

Transfers
FROM: 1800-B TO: <None> on 05/10/24-2317
FROM: <None> TO: 1800-B on 05/10/24-1226
FROM: <None> TO: <None> on 05/08/24-1052

Drug Allergies  No Known Allergy

ADRS

Creatinine Test Results

                    LABORATORY
Date     Time Test        Result              Flag Normal Range
05/10/24 1310 CREATININE  .0.93                    0.61-1.24 mg/dl

| | | |
|---|---|---|
| ceFAZolin 2 GM vial | 05/12/24<br>05/12/24 | 2 GM |
| Ord Dr: DIDINGER,TRACEY C MD | | |
| ONE | | |
| Sig: .PRE-OP          Sched:ONE | | Route:IV |

| | | | |
|---|---|---|---|
| HYDROmorphone 1 MG/ML SYG | 05/10/24  05/10/24-1743  TLANDRIO | 0.2 MG |
| | 05/10/24 | | |
| Ord Dr: JALALI,SHAHRAM MD | | | |
| PRN | | | |
| Sig: .PACU          Sched:PRN MILD PAIN - MILD PAIN | | Route:IV |

| | | | |
|---|---|---|---|
| HYDROmorphone 1 MG/ML SYG | 05/10/24  05/10/24-1717  TLANDRIO | 0.4 MG |
| | 05/10/24  05/10/24-1733  TLANDRIO | 0.4 MG |
| Ord Dr: JALALI,SHAHRAM MD | | | |
| PRN | | | |
| Sig: .PACU          Sched:PRN MOD PAIN - MODERATE PAIN | | Route:IV |

| | | |
|---|---|---|
| FENTAnyl 50 MCG/ML VIAL | 05/10/24<br>05/10/24 | 25 MCG |
| Ord Dr: JALALI,SHAHRAM MD | | |
| PRN | | |
| Sig: .PACU ORDER     Sched:PRN MILD PAIN - MILD PAIN | | Route:IV |

| | | | |
|---|---|---|---|
| FENTAnyl 50 MCG/ML VIAL | 05/10/24  05/10/24-1711  TLANDRIO | 50 MCG |
| | 05/10/24  05/10/24-1724  TLANDRIO | 50 MCG |
| Ord Dr: JALALI,SHAHRAM MD | | | |
| PRN | | | |
| Sig: .PACU ORDER     Sched:PRN MOD PAIN - MODERATE PAIN | | Route:IV |

# EXHIBIT C2

1

Age/Sex: 58 M
Unit #: M001396519
Account#: V01019222262
Admitted:

HUGHES,PHILLIP(DEP SDC)
SDS-
DIDINGER,TRACEY C MD
Valley Presbyterian Hospital ***

Page: 1
Printed 05/11/24 at 0024
Period ending 05/11/24 at 0024
ARCHIVED NOTES

| Occurred | | Recorded | | | Nurse |
|---|---|---|---|---|---|
| Date | Time | Date | Time | By | |

05/10/24 1308 05/10/24 1308 MPR
no need for ekg,cxr per dr jalali. labs drawn as ordered
05/10/24 1658 05/10/24 1727   TL
PACU NOTE
PT TO PACU S/P LEFT KNEE PATELLAR REPAIR. DRESSING CDI W BRACE IN PLACE. VSS. SIMPLE MASK IN PLACE. + CMS TO LLE. PAIN 7/10.
05/10/24 1915 05/10/24 1954   TL
PACU NOTE
NOTIFIED DR DIDINGER OF PATIENT REPORT OF PAIN AND REFUSAL TO LEAVE HOSPITAL. INFORMED MD OF PAIN MEDICATIONS ADMINISTERED, INCLUDING PATIENT SELF MEDICATING WITH HOME MEDS. DR DIDINGER SPOKE TO PATIENT VIA TELEPHONE. GARBAGE BAG FILLED WITH ICE PER PATIENT/DR DIDINGER REQUEST. PT VSS.
05/10/24 1954 05/10/24 1957   TL
PACU NOTE
SPOKE TO PATIENT'S DAUGHTER, WHITNEY. WHITNEY STATES SHE IS UNABLE TO RETURN TO THE HOSPITAL TO TRANSPORT PATIENT HOME. DR DIDINGER NOTIFIED AND AGREED TO BUTTERFLY TRANSPORT SYSTEM TO TRANSPORT PT HOME. ICE PACK IN PLACE. PT AWAKE AND ALERT, SPEAKING ON THE TELEPHONE.
05/10/24 2104 05/10/24 2109   TL
PACU NOTE
PIV D/C'D WITH CATH TIP INTACT. VSS. PT DRESSING IN CLOTHING (BLACK T SHIRT, BLACK SHORTS, BLACK HAT, & FLIP FLOPS) WITH MINIMAL ASSIST. PT WITH PERSONAL CELL PHONE. D/C INSTRUCTIONS REVIEWED WITH PATIENT. ALL QUESTIONS ANSWERED. DRESSING TO LLE AND KNEE BRACE IN PLACE. BUTTERFLY TRANSPORTATION ARRANGED FOR PT TRANSPORT HOME. AARON, RN TRANSPORTED PT TO PATIENT'S PRIVATE VEHICLE TO GATHER ADDITIONAL PERSONAL EFFECTS WHILE AWAITING BUTTERFLY TRANSPORTATION TO HOME.
05/10/24 2310 05/10/24 2315   RD
PACU NOTE: PT TAKEN BY W/C TO BUTTERFLI TAXI FOR DC HOME. NO C/O PAIN, NAUSEA.

| Occurred | | Recorded | | | Notes: All Categories |
|---|---|---|---|---|---|
| Date | Time | Date | Time | By | Category |

05/10/24 1308 05/10/24 1308 MPR
no need for ekg,cxr per dr jalali. labs drawn as ordered
05/10/24 1658 05/10/24 1727   TL
PACU NOTE
PT TO PACU S/P LEFT KNEE PATELLAR REPAIR. DRESSING CDI W BRACE IN PLACE. VSS. SIMPLE MASK IN PLACE. + CMS TO LLE. PAIN 7/10.
05/10/24 1915 05/10/24 1954   TL
PACU NOTE
NOTIFIED DR DIDINGER OF PATIENT REPORT OF PAIN AND REFUSAL TO LEAVE HOSPITAL. INFORMED MD OF PAIN MEDICATIONS ADMINISTERED, INCLUDING PATIENT SELF MEDICATING WITH HOME MEDS. DR DIDINGER SPOKE TO PATIENT VIA TELEPHONE. GARBAGE BAG FILLED WITH ICE PER PATIENT/DR DIDINGER REQUEST. PT VSS.
05/10/24 1954 05/10/24 1957   TL
PACU NOTE
SPOKE TO PATIENT'S DAUGHTER, WHITNEY. WHITNEY STATES SHE IS UNABLE TO RETURN TO THE HOSPITAL TO TRANSPORT PATIENT HOME. DR DIDINGER NOTIFIED AND AGREED TO BUTTERFLY TRANSPORT SYSTEM TO TRANSPORT PT HOME. ICE PACK IN PLACE. PT AWAKE AND ALERT, SPEAKING ON THE TELEPHONE.
05/10/24 2104 05/10/24 2109   TL
PACU NOTE
PIV D/C'D WITH CATH TIP INTACT. VSS. PT DRESSING IN CLOTHING (BLACK T SHIRT, BLACK SHORTS, BLACK HAT, & FLIP FLOPS) WITH MINIMAL ASSIST. PT WITH PERSONAL CELL PHONE. D/C INSTRUCTIONS REVIEWED WITH PATIENT. ALL QUESTIONS ANSWERED. DRESSING TO LLE AND KNEE BRACE IN PLACE. BUTTERFLY TRANSPORTATION ARRANGED FOR PT TRANSPORT HOME. AARON, RN TRANSPORTED PT TO PATIENT'S PRIVATE VEHICLE TO GATHER ADDITIONAL PERSONAL EFFECTS WHILE AWAITING BUTTERFLY TRANSPORTATION TO HOME.

(handwritten left margin: Pain * Self medicated. Beg for Meds + Ice)

**EXHIBIT D2**

```
DATE: 05/11/24 @ 0035        Valley Presbyterian Hospital PHA *LIVE*                    PAGE 2
USER: PHABKGJOB              Medication Administration Summary
```

```
Patient     [REDACTED]                        Responsible Doctor DIDINGER,TRACEY C MD
Account Number V01019222262    Location  SDS          Unit Number      M001396519
Age/Sex          58/M'         Room                   Registered Date 05/10/24
Status         DEP SDC         Bed                    Discharged Date
```

HUGHES, PHILLIP                          V01019222262                      (Continued)

---

OXYCODONE/ACETAMINOPHEN (5/325) TAB    05/10/24                                    1 TAB
                                       05/10/24

Ord Dr: JALALI,SHAHRAM MD
PRN
Sig: .PACU ORDER        Sched:PRN MILD PAIN - MILD PAIN                      Route:PO

---

ONDANSETRON 4 MG INJ                   05/10/24  05/10/24-1717  TLANDRIO      4 MG
                                       05/10/24

Ord Dr: JALALI,SHAHRAM MD
PRN
Sig: .PACU ORDER        Sched:PRN NV - NAUSEA AND/OR VOMITING                Route:IV

---

LABETALOL 20 MG/4 ML INJ               05/10/24  05/10/24-1717  TLANDRIO      5 MG
                                       05/10/24  05/10/24-1730  TLANDRIO      5 MG

Ord Dr: JALALI,SHAHRAM MD
PRN
Sig: .PACU ORDER        Sched:PRN BP - ELEVATED BLOOD PRESSURE              Route:IV

---

hydrALAzine 20 MG INJ                  05/10/24                               5 MG
                                       05/10/24

Ord Dr: JALALI,SHAHRAM MD
PRN
Sig: .PACU ORDER        Sched:PRN BP - ELEVATED BLOOD PRESSURE              Route:IV

---

MEPERIDINE 25 MG INJ                   05/10/24  05/10/24-1749  TLANDRIO     25 MG
                                       05/10/24

Ord Dr: JALALI,SHAHRAM MD
PRN
Sig: .PACU ORDER        Sched:PRN RIGORS - POST OPERATIVE SHIVERING         Route:IV

---

diphenhydrAMINE 50 MG INJ              05/10/24  05/10/24-1740  TLANDRIO     25 MG
                                       05/10/24

Ord Dr: JALALI,SHAHRAM MD
PRN
Sig: .PACU ORDER        Sched:PRN PRURITUS - PRURITUS                       Route:IV

---

OXYCODONE/ACETAMINOPHEN (5/325) TAB    05/10/24  05/10/24-1830  CENRIQUEZ    2 TAB
                                       05/10/24

Ord Dr: JALALI,SHAHRAM MD
STA
Sig: ONCE          Sched:STA                                               Route:PO

---

LIDOCAINE 1% (MPF) 10 ML INJ           05/10/24  05/10/24-1420  TDIDINGER   10 ML
                                       05/10/24

Ord Dr: DIDINGER,TRACEY C MD
ONE
Sig: .STK-MED      Sched:ONE                                               Route:INJ

(844) 994-1177



# How Long Does Hydrocodone Stay In Your Urine?

Urine Detection Time      Factors That Affect Detection Time      How To Get Hydrocodone Out Of Your System
Treatment for Hydrocodone Abuse

Vicodin (hydrocodone) is a prescription opioid drug that can be detected in the urine for one to four days after use. The timeline for hydrocodone detection may depend on factors such as drug dosage, frequency of use, and the nature of your hydrocodone use.



Hydrocodone is a prescription opiate that can remain detectable in the urine for one to four days after use. This is an average estimate that can vary according to a variety of factors.

Urine drug tests are the preferred method for detecting drug use. After hair testing, urine testing can detect opioid use for the longest amount of time.

## Detecting Hydrocodone In Urine

Hydrocodone can typically be detected in urine for between **one and four days** after its last use.

# EXHIBIT E2



Patient Name _____ Bush, Phillip _____    Phone No. _____
Address _____
_____    DOB _____    Grade: 19.

Hydroxyzine 25 y to # 60-
fr i t BID pm

QUANTITY
⊒ 1-24
⊒ 25-49
☑ 50-74
⊒ 75-100
⊒ 101-150
⊒ 151 and over
Units _____
Refills: ⊒ 0 ☑ 1 ⊒ 2
⊒ 3 ⊒ 4 ⊒ 5
⊒ LABEL IN SPANISH
⊒ DO NOT SUBSTITUTE
Void after: _____

X _____    DATE 12/18/19

# EXHIBIT F2

1

| **ARTS-PC** | **Articles of Incorporation of a Professional Corporation** | **3824047** |

To form a **professional corporation** in California, you can fill out this form or prepare your own document, and submit for filing along with:

- A **$100 filing fee.**

- A separate, non-refundable **$15 service fee** also must be included, if you **drop off** the completed form or document.

*Important!* Corporations in California may have to pay a minimum $800 yearly tax to the California Franchise Tax Board. For more information, go to https://www.ftb.ca.gov.

Note: *Before submitting the completed form*, you should consult with a private attorney for advice about your specific business needs.

**FILED**
**Secretary of State**
**State of California**

Icc.    **SEP 0 8 2015**

This Space For Office Use Only

**For questions about this form, go to** *www.sos.ca.gov/business/be/filing-tips.htm.*

**Corporate Name** (List the proposed corporate name. Contact the California state board or agency that controls your profession to find out if your profession is authorized to be a corporation in California and if there are any specific corporate name style rules. Go to www.sos.ca.gov/business/be/name-availability.htm for general corporate name requirements and restrictions.)

① The name of the corporation is  Shahin S. Rad M.D., PC

**Corporate Purpose** (List the authorized profession.)

② The purpose of the corporation is to engage in the profession of _____    Medicine

and any other lawful activities (other than the banking or trust company business) not prohibited to a corporation engaging in such profession by applicable laws and regulations. This corporation is a **professional corporation** within the meaning of California Corporations Code section 13400 et seq.

**Service of Process** (List a California resident or a California registered corporate agent that agrees to be your initial agent to accept service of process in case your corporation is sued. You may list any adult who lives in California. You may **not** list your own corporation as the agent. Do not list an address if the agent is a California registered corporate agent as the address for service of process is already on file.)

③ a.  Shahin S. Rad
       *Agent's Name*

   b.  16311 Ventura Blvd., Suite 1150, Encino                                      CA 91436
       *Agent's Street Address (if agent is not a corporation) - Do not list a P.O. Box*    *City (no abbreviations)*    *State    Zip*

**Corporate Addresses**

④ a.  16311 Ventura Blvd., Suite 1150, Encino, CA 91436
       *Initial Street Address of Corporation - Do not list a P.O. Box*    *City (no abbreviations)*    *State    Zip*

   b.  _____
       *Initial Mailing Address of Corporation, if different from 4a*    *City (no abbreviations)*    *State    Zip*

**Shares** (List the number of shares the corporation is authorized to issue. Note: Before shares of stock are sold or issued, the corporation must comply with the Corporate Securities Law of 1968 administered by the California Department of Business Oversight. For more information, go to www.dbo.ca.gov or call the California Department of Business Oversight at (866) 275-2677.)

⑤ This corporation is authorized to issue only one class of shares of stock.

  The total number of shares which this corporation is authorized to issue is _____    1000

This form must be signed by each incorporator. If you need more space, attach extra pages that are 1-sided and on standard letter-sized paper (8 1/2" x 11"). All attachments are made part of these articles of incorporation.

▶  _____                Ed Tsuji, Incorporator
   *Incorporator - Sign here*                *Print your name here*

| Make check/money order payable to: **Secretary of State** | **By Mail** | **Drop-Off** |
| Upon filing, we will return one (1) uncertified copy of your filed document for free, and will certify the copy upon request and payment of a $5 certification fee. | Secretary of State <br> Business Entities, P.O. Box 944260 <br> Sacramento, CA 94244-2600 | Secretary of State <br> 1500 11th Street, 3rd Floor <br> Sacramento, CA 95814 |

Corporations Code §§ 200-202 et seq. and 13400 et seq., Revenue and Taxation Code § 23153.    2014 California Secretary of State
ARTS-PC (REV 03/2014)                www.sos.ca.gov/business/be

California
Secretary of State

Business          UCC                                                    Login

Home

# Business Search

Search

> The California Business Search
> provides access to available
> information for **corporations**,
> **limited liability companies**
> and **limited partnerships** of
> record with the California
> Secretary of State, with **free**
> **PDF copies** of over 17 million
> imaged business entity
> documents, including the most
> recent imaged Statements of
> Information filed for
> Corporations and Limited
> Liability Companies.

Forms

Help

SHAHIN S. RAD M.D., PC
(3824047)



Request
Certificate

| | |
|---|---|
| Initial Filing Date | 09/08/2015 |
| Status | Active |
| Standing - SOS | Good |
| Standing - FTB | Good |
| Standing - Agent | Good |
| Standing - VCFCF | Good |
| Formed In | CALIFORNIA |
| Entity Type | Stock Corporation - CA - Professional |
| Principal Address | 16311 VENTURA BLVD, SUITE 1150 ENCINO, CA 91436 |
| Mailing Address | 16311 VENTURA BLVD, SUITE 1150 ENCINO,CA91436 |
| Statement of Info Due Date | 09/30/2025 |
| Agent | Individual SHAHIN SHEIBANI-RAD 16311 VENTURA BLVD, SUITE |

Currently, information for
Limited Liability Partnerships
(e.g. law firms, architecture
firms, engineering firms, public
accountancy firms, and land
survey firms), General
Partnerships, and other entity
types are **not contained** in the
California Business Search. If
you wish to obtain information
about LLPs and GPs, submit a
Business Entities Order paper
form to request copies of filings
for these entity types. Note: This
search is not intended to serve
as a name reservation search.
To reserve an entity name,
select Forms on the left panel
and select Entity Name
Reservation ? Corporation, LLC,
LP.

## Basic Search

> A Basic search can be
> performed using an entity
> name or entity number.
> When conducting a search
> by an entity number, where
> applicable, **remove "C"**
> from the entity number.
> Note, **a basic search** will

Business    UCC

Home

Search

Form

Help

Partnerships, Cooperatives, Name Reservations, Foreign Name Reservations, Unincorporated Common Interest Developments, and Out of State Associations). The basic search performs a contains ?keyword? search. The Advanced search allows for a ?starts with? filter. To search entities that have a status other than active or to refine search criteria, use the **Advanced** search feature.

### Advanced Search

An Advanced search is required when searching for publicly traded disclosure information or a status other than active.

An Advanced search allows for searching by specific entity types (e.g., Nonprofit Mutual Benefit Corporation) or by entity groups (e.g., All Corporations) as well as searching by ?begins with? specific search criteria.

**Disclaimer:** Search results are limited to the 500 entities closest matching the entered search criteria. If your desired search result is not found within the 500 entities provided, please refine the search criteria using the Advanced search function for additional results/entities. The California Business Search is updated as documents are approved. The data provided is not a complete or certified record.

Although every attempt has been made to ensure that the information contained in the

## SHAHIN S. RAD M.D., PC
(3824047)



**Request Certificate**

| | |
|---|---|
| Initial Filing Date | 09/08/2015 |
| Status | Active |
| Standing - SOS | Good |
| Standing - FTB | Good |
| Standing - Agent | Good |
| Standing - VCFCF | Good |
| Formed In | CALIFORNIA |
| Entity Type | Stock Corporation - CA - Professional |
| Principal Address | 16311 VENTURA BLVD, SUITE 1150 ENCINO, CA 91436 |
| Mailing Address | 16311 VENTURA BLVD, SUITE 1150 ENCINO,CA91436 |
| Statement of Info Due Date | 09/30/2025 |
| Agent | Individual SHAHIN SHEIBANI-RAD 16311 VENTURA BLVD, SUITE |

Business         UCC

*consequence, or damage
resulting directly or indirectly
from reliance on the accuracy,
reliability, or timeliness of the
information that is provided. All
such information is provided
"as is." To order certified copies
or certificates of status, (1)
locate an entity using the
search; (2)select Request
Certificate in the right-hand
detail drawer; and (3) complete
your request online.*

Shahin S. R    🔍

Advanced ∨

Results: 1

| Entity Information | Initial Filing Date |
|---|---|
| SHAHIN S. RAD M.D., PC (3824047) | 09/08/2015 |

# SHAHIN S. RAD M.D., PC (3824047)



**Request Certificate**

| | |
|---|---|
| *Initial Filing Date* | 09/08/2015 |
| *Status* | Active |
| *Standing - SOS* | Good |
| *Standing - FTB* | Good |
| *Standing - Agent* | Good |
| *Standing - VCFCF* | Good |
| *Formed In* | CALIFORNIA |
| *Entity Type* | Stock Corporation - CA - Professional |
| *Principal Address* | 16311 VENTURA BLVD, SUITE 1150 ENCINO, CA 91436 |
| *Mailing Address* | 16311 VENTURA BLVD, SUITE 1150 ENCINO,CA91436 |
| *Statement of Info Due Date* | 09/30/2025 |
| *Agent* | Individual SHAHIN SHEIBANI-RAD 16311 VENTURA BLVD, SUITE |

# EXHIBIT G2

L.A BONE & JOINT COMPLAINT

1

## PROOF OF SERVICE

2

**PHILLIP HUGHES**
3    **philliphughes002@gmail.Com**
**In Propria Persona**
4    **323.702.1866**

5

6        I Phillip Hughes reside in the County of Los Angeles; I am over the age

7    of eighteen years and am a party to the within action. My phone number is 323.702.1866

8
        On May 14, 2025 I served a Demand, Proposed Complaint and Law Enforcement Report,
9    Proposed Petition to Investigate/Prosecute and Proposed first set of Interrogatories on the parties in this
10    action by Personal Service a true and correct copy or notice thereof to:

11    SHANIN S. RAD M.D, P.C

12    dba-La Bone and Joint Institute

13    16311 VENTURA BLVD, SUITE 1150

14    ENCINO CA. 91436

15    frontoffice@lani.com attn Lovena

16    vanessa.ojeda@labji.com

17

18

19

20

21                                                    PHILLIP HUGHES

22

23            LOS ANGELES BONE & JOINT INSTITUTE
                    SHAHIN S. RAD M.D.
24              16311 VENTURA BLVD.
                        SUITE 1150
25                  ENCINO, CA 91436                   Received By:

26

27

28

                                    10

# EXHIBIT H2

If you're ever in crisis and need to talk to someone right away, call the Veterans Crisis Line at **988**. Then select 1.

Plaintiff Phillip P. Hughes' Patella

# Images: KNEE: LEFT ROUTINE (AP/LAT)

Date and time performed: June 13, 2025 4:41 a.m.

Showing 1 to 2 of 2 images

**Image 1 of 2**



**Image 2 of 2**



Note the patella
Placement

# How to share images with a non-VA provider

The best way to share these images with a non-VA provider is to ask your VA care team to share them directly.

If you want to try sharing these images yourself, you can download them as DICOM files in a ZIP folder.

Here's what to know:

- Your non-VA provider may not be able to accept these DICOM files from you. They may require your VA care team to share them directly.
- Providers use special software to view DICOM files, so you may not be able to view them on your device.
- These are large files that take a lot of storage space on your device. So we recommend downloading on a computer instead of a mobile phone.
- If you're using a public or shared computer, remember that downloading saves a copy of your files to the computer you're using.

normal knee x-ray

explore with
SEARCH

All    **Images**    Video    Filter

 Knee Joint X-ray   Arthritic Knee X-ray   normal knee x-ray vs Osteoarthritis   Normal Right Knee X-ray   Bone On Bone Knee X-ray   Knee Arthritis X-ray

      

Normal Knee
Stock Photo
34444037
www.dream

View Im




Normal
Patella →

 

**Related searches**

 normal knee x-ray **Side View**     normal knee x-ray **Lateral**

 normal knee x-ray **Sunrise**     normal knee x-ray **Adult**

 

      

   

**Related searches**

 normal knee x-ray with B

 normal knee x-ray Image


# The Anatomy of the Patella

It protects the knee joint from damage

By Colleen Travers    Updated on August 03, 2024

☑ Medically reviewed by Soma Mandal, MD

## Table of Contents

Anatomy

Function

Associated Conditions

Rehabilitation

The patella ◄) , most commonly referred to as the kneecap, is the bone at the front of the knee. It's the largest sesamoid ◄) bone in the body. A sesamoid bone is one that is embedded in a tendon.

In the patella's case, it exists within the quadriceps tendon. This tendon helps hold the patella in place along with other muscles found in and near the quadriceps so it can do its most important job: protect the knee joint.

This article will discuss the anatomy and function of the patella. It also covers the three main types of patella injuries and how to treat them.